UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES COBB<br>1734 "U" STREET N.W.<br>Washington, D.C. 20009<br><br>　　　　Plaintiff,<br>　　v.<br><br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY<br>600 5th STREET N.W.<br>WASHINGTON, D.C. 20001<br><br>SERVE:<br>GENERAL MANAGER PAUL WIEDEFELD<br>GENERAL COUNSEL, PATRICIA YEE<br>WMATA<br>600 5TH STREET N.W.<br>WDC 20001<br><br>　　　　Defendant. | Case No. |

**COMPLAINT AND JURY DEMAND**

Comes now Plaintiff, Charles Cobb, by and through his counsel Ronald Dixon, Bynum & Jenkins, 1010 Cameron Street, Alexandria, Virginia, and now says: this complaint is made against the Washington Metropolitan Area Transit Authority (hereinafter "WMATA"). In support of this complaint Plaintiff states as follows:

1

## JURISDICTION AND VENUE

1. Jurisdiction is vested in this Court pursuant to the Washington Metropolitan Area Transit Authority Compact (hereinafter "the WMATA Compact"), which established original and concurrent jurisdiction in this Court over matters involving WMATA. See WMATA Compact Art. XVI § 81; D.C. Code § 9-1107.01(81).

2. This Court also has supplemental jurisdiction over related District of Columbia common law claims pursuant to 28 U.S.C. § 1367, in that the common law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this judicial district because all of the events or omissions giving rise to the claims asserted herein occurred within the District of Columbia.

## PLAINTIFF

4. Plaintiff Charles Cobb is a citizen of the United States and at all times relevant to these matters resided at 1734 "U" Street N.W. Washington, D.C. 20009.

## DEFENDANTS

5. Defendant WMATA is a tri-jurisdictional government agency created by Congress by way of the WMATA Compact.

6. Pursuant to the WMATA Compact, the exclusive remedy for tort claims brought against WMATA shall be by suit filed against WMATA; suits against the

State or local governments of the WMATA Compact signatories, i.e., the District of Columbia, Maryland and Virginia, are expressly prohibited.

7. At all times relevant hereto, Defendant WMATA was the owner and operator of a railway transit system, with multiple railway stations and lines located throughout the District of Columbia.

8. At all times relevant hereto, Defendant WMATA was the owner and operator of a railway transit station, known as the Gallery Place Metro Station, located at 630 H Street N.W., Washington, D.C. 20001.

9. At all times relevant hereto, Defendant WMATA's railway transit system, including the Gallery Place Metro Station, was operated by duly authorized agents, servants and/or employees of Defendant WMATA, who were acting within the course and scope of their employment and/or agency with Defendant WMATA.

10. At all times relevant hereto, Defendant WMATA, through its duly authorized agents, servants and/or employees, provided public transportation services throughout the District of Columbia and maintained its principal place of business within the District of Columbia.

11. The provision of mass transportation services, including the duties and responsibilities that accompany such services, is a proprietary function within the meaning of the WMATA Compact.

12. Pursuant to the WMATA Compact, Defendant WMATA shall be held liable for its negligent acts and/or omissions, including those of its agents, servants and/or employees, committed in the conduct of any proprietary function. D.C. Code § 9-1107.01 (80).

## ALLEGATIONS COMMON TO ALL COUNTS

13. On December 6, 2019, Plaintiff was at his job, the United States Attorney's Office for the District of Columbia, finishing up a long day. Plaintiff left his office and joined a friend of Plaintiff's, Witness 1, who was a former Assistant United States Attorney in the same office, for the metro ride home. Plaintiffs' work address was 555 4th Street N.W. WDC 20001.

14. Plaintiff and Witness 1 proceeded to the Washington Metropolitan Area Transit Authority metro rail stop located below the Capitol One Arena, Gallery Place. Plaintiff and Witness 1 arrived at Gallery Place metro stop at approximately between 9:00 and 9:30 P.M., on December 6, 2019.

15. The Plaintiff and Witness 1 descended down the escalator to the mezzanine and started to walk to the turnstile for entry onto the metro platform. At that time Plaintiff had no physical problems that prevented him from walking or negotiating the escalator. He did not walk down the escalator he allowed it to bring him to the area where he could access the train through the turnstiles near the Kiosk, leading him to the Green line.

16. Witness 1 also took the same path as Plaintiff, who got to the turnstile first. Witness 1 saw Plaintiff suddenly and unexpectedly lurch forward and Plaintiff's legs fly out from under him.

17. Plaintiff suddenly fell to the floor landing in a hurdlers position with one leg extended forward and his other leg, left, bent awkwardly under him. Plaintiff gave out a cry of pain and was not able to move or get up. Plaintiff was observed to be in great pain and could not move.

18. Plaintiff fell close to the turnstile and close to the Kiosk, which lead to the Green line. Plaintiff yelled for help as did Witness 1. No one came immediately to assist as Witness 1 tried to console Plaintiff while he lay on the floor near the turnstile. Plaintiff could not move his legs or get up.

19. Witness 1 looked into the Kiosk saw no one but never the less continued to yell for help as other metro riders approached and moved through the other turnstiles to board trains. This went on for a considerable period of time.

20. After about 15 to 20 minutes of this ordeal, Witness 1 saw a single male metro employee appear. That employee looked at Plaintiff but backed away and said he could not help.

21. Witness 1 asked this male employee of Defendant WMATA to please help but he retreated saying that he would call a supervisor. Sometime after the male employee appeared a female metro employee arrived and looked at Plaintiff. She

also moved away from Plaintiff and went into an adjacent office near the turnstile where Plaintiff lay still in pain.

22. Witness 1 observed the two metro employees the male and the female supervisor come in and out of the office to look at Plaintiff but did not approach him nor did they advise if they had called for assistance for Plaintiff. Witness 1 used her personal phone to call for help by calling WMATA asking for help.

23. Witness 1 and Plaintiff were finally attended to by an Emergency Medical Tech ambulance that arrived some time later to assist Plaintiff. Plaintiff was also attended to by a Metropolitan Police Department Officer Jabdiel Fuentes, badge number 9925. **Exhibit 1**

24. Plaintiff had to be lifted onto a stretcher and his leg straightened. Plaintiff suffered a severe injury to his knee that was later determined to need immediate surgery. It was concluded that Plaintiff had ruptured his patella (knee cap) and needed surgery.

25. Plaintiff continued to suffer much pain as he was transferred to Howard University Hospital from the Gallery Place metro station. Once the paramedics were able to get Plaintiff off of the floor and onto the stretcher Witness 1 saw what appeared to be a foreign object/substance under Plaintiffs left leg at or near the location where he had fallen.

26. Witness 1 did not touch or remove the object but noticed that that object was near the location where Plaintiff had stepped before he lost his footing and ended on the floor. Plaintiff was taken to Howard University Hospital and treated.

27. At all times relevant and material to this case Defendant WMATA knew or should have known that the aforementioned dangerous condition of water or other slippery substance existed and failed to clean or correct that condition.

28. At Howard University Hospital it was determined that Plaintiff had torn sections of his knee cap that keep the patella from moving involuntarily thus rendering his leg unable to support his body. Plaintiff was advised that he needed immediate surgery and was admitted to the hospital after agreeing to the surgery.

29. Surgery was performed the next day, in the morning. Plaintiff had surgery and continues to be under a doctor's care. Plaintiff has been referred and is currently engaged in treatment for rehabilitation for his left knee. Plaintiff has lost time from his job with the Department of Justice and his pain continues as a result of this incident.

30. As employees of WMATA the two people who arrived after Plaintiffs screams for help and saw him lying on the floor near the turnstiles leading to the Green Line had a duty to assist the Plaintiff. They did not.

31. At all times relevant to this case Plaintiff's fall was due to the violations of law and negligence of Defendant WMATA. Defendant WMATA violations of law and

negligence include but were not limited to, failing to warn others of the dangerous conditions, failing to perform reasonable inspections necessary to detect or learn about the dangerous condition failing to prevent or regulate access to dangerous areas, and failing to exercise ordinary and reasonable care under the circumstances.

32. At all times relevant to this case WMATA's duty to address negligent maintenance and/or operation claims against it are clearly permissible and WMATA does not enjoy sovereign immunity for these types of claims.

33. After Plaintiff's surgery Plaintiff continued therapy and returned to work. Plaintiff directed his counsel to investigate the circumstances of his injury and directed Plaintiff's counsel to gather documents. **Exhibit 1**

34. Plaintiff directed his counsel to send notice of his injury to WMATA and asked WMATA to conduct an investigation of Plaintiffs injury at Gallery Place N.W. **Exhibit 2, 3**

35. Plaintiff's letter of June 16, 2020, to General Counsel Yee, **Exhibit 2,** included a request for preservation of evidence not limited to any and all video or audio recordings of the events taking place at the Gallery Place Metro stop on December 6, 2019. Plaintiff's letter of June 16, 2020, was received by Defendant WMATA on June 6, 2020. **Exhibit 4,4A**

## COUNT ONE

### (Defendant WMATA Negligent Infliction of Emotional Distress on Plaintiff Charles Cobb)

36. Plaintiff incorporates by reference each preceding paragraph as if fully set forth herein.

37. The negligent acts and omissions of Defendant WMATA caused serious emotional distress to Plaintiff that a reasonable person in Defendant's position would have foreseen under the circumstances.

38. Defendant WMATA's two employees were acting in the scope of their employment as employees of WMATA and were acting on behalf of and in the interests of their employer, WMATA when they observed Plaintiff laying on the mezzanine floor after his fall. They did nothing to assist him.

39. The conduct of each of these Defendant WMATA employees, complained of herein, was extreme and outrageous and intentionally and/or recklessly caused Plaintiff severe emotional distress.

40. The conduct of Defendant WMATA through its duly authorized agents, servants and/or employees, the two unidentified WMATA employees towards Plaintiff constitutes the intentional infliction of emotional distress in violation of the common law of the District of Columbia.

41. As a direct and proximate result of Defendant WMATA's wrongful conduct, Plaintiff suffered significant enduring emotional pain and suffering, anxiety, fear and shame, and other damages. Specifically, Plaintiff Charles Cobb has experienced severe insomnia, persistent recurring nightmares, and acute anxiety which affected Plaintiff to such a degree that Plaintiff was forced to seek and obtain medical treatment, which is ongoing.

## COUNT TWO
### (Defendant WMATA Negligence on Plaintiff Charles Cobb)

42. Plaintiff incorporates by reference each preceding paragraph as if fully set forth herein.

43. At all times relevant to this case Defendant WMATA had the duty to exercise ordinary care under the circumstances to keep the Gallery Place station reasonably safe and to avoid injuring persons lawfully upon the premises, which included but was not limited to, properly maintaining the area where Plaintiff was injured, warning others of dangerous conditions, remedying dangerous conditions, performing reasonable inspections necessary to detect or learn about dangerous conditions, performing reasonable inspections necessary to detect or learn about dangerous conditions, preventing or regulating access to dangerous areas, and exercising ordinary and reasonable care under the circumstances . In violation of its duty Defendant WMATA caused the incident set forth in this case.

44. As a direct and proximate result of the negligence of Defendant WMATA Plaintiff suffered injuries and damages as set forth above.

45. The injuries and damages were caused solely and proximately by the negligence of Defendant WMATA without any contributory negligence on the part of Plaintiff.

46. Plaintiff also alleges that Defendant WMATA's employees' failure to immediately respond to Plaintiff's injuries reflects negligence as it relates to the severity of Plaintiffs injuries.

47. The Defendant WMATA, as a common carrier offering public transportation to passengers, including Plaintiffs', through its duly authorized agents, servants and/or employees, owed a duty to exercise reasonable care to its passengers, including Plaintiffs', Charles Cobb. This duty included, among other things, the duty to take reasonable action to give its passengers, including the Plaintiffs', Charles Cobb, first aid, after it knows or has reason to know that they are injured, and to care for them until they can be cared for by others. This duty extends to cases where the injury is due to natural causes, pure accident, or to the negligence of the Plaintiff himself.

48. Defendant WMATA, through its duly authorized agents, servants and/or employees, breached its duty of care, and was negligent in, among other things, failing to timely and appropriately recognize, investigate and otherwise respond to Plaintiffs' Charles Cobb, following his initial fall at the turnstile, and resulting injuries, and render or obtain timely and necessary emergency, medical and/or other assistance, despite actual and/or constructive knowledge of this initial fall/occurrence.

49. As the direct and proximate result, the Plaintiffs' injuries from such fall were exacerbated, in that the subsequent almost 30 minute delay would have been avoided had such timely and appropriate assistance occurred.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a) enter judgment against Defendant WMATA;

(b) in an amount to be determined at trial, but believed to be no more than five hundred thousand dollars ($500,00.00) in damages;

(c) award Plaintiffs' costs, interest, and reasonable attorneys' fees for this action; and

(f) order such other and further relief as the Court deems just and proper under the circumstances.

/s/ *Ronald Dixon*
Ronald Dixon
D.C. Bar No. 954628
Bynum & Jenkins, PC
1010 Cameron Street
Alexandria, VA 22314
T: (703) 549-7211
F: (703) 549-7701
E: rdixon@bynumandjenkinslaw.com
*Attorney for Plaintiff*

Date: December 4, 2020

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.