## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES W. COBB, | |
| Plaintiff, | Civil Action No. 20-cv-3522 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Charles Cobb alleges that on the evening of December 6, 2019, he slipped on a foreign substance on the ground in the Gallery Place/Chinatown Metro station, fell awkwardly to the floor, and badly injured his left leg. Compl. ¶ 16–17, 25–26, ECF No. 1. As he lay on the ground in great pain, unable to move, and calling for help, employees of the Washington Metropolitan Area Transit Authority ("WMATA") at the station allegedly did nothing to help him. *See id.* ¶¶ 21–22, 38, 47. Eventually, after a friend who was present with him at the time of the fall phoned for help, medical assistance arrived, and plaintiff was transported to a hospital and underwent emergency on his leg. *See id.* ¶¶ 22–29. In the instant lawsuit, plaintiff alleges that WMATA was negligent in failing both to notice and clean the substance that caused his slip and fall, and to summon medical assistance for him after his injury, and he seeks to recover damages for the injury he suffered to his knee as well as emotional damages. *See id.* ¶¶ 36–49; *id.* at 12. Pending before the Court is WMATA's Partial Motion to Dismiss, based on arguments that some of plaintiff's claims are not adequately pled and that overlap between two of plaintiff's claims could lead to the award of duplicative damages. *See* Def.'s Partial Mot. Dismiss, ECF No. 7. For the reasons set forth below, WMATA's motion is denied.

# I.     BACKGROUND

Pertinent background underlying the instant lawsuit is described, followed by review of the brief procedural history.

## A.     Factual Background

On the evening of December 6, 2019, plaintiff left work and met a friend and former co-worker to ride the Metro home together.  Comp. ¶ 13.  They proceeded together to the Gallery Place/Chinatown Metro stop and arrived between 9:00 and 9:30 PM.  *See id.* ¶ 14.  The pair descended the escalator into the underground Gallery Place station and walked toward the turnstiles leading to the Green Line.  *See id.* ¶ 15.  As plaintiff approached the turnstiles, however, his friend saw him "suddenly and unexpectedly lurch" and saw his "legs fly out from under him."  *Id.* ¶ 16.  Plaintiff "suddenly fell to the floor," "landing in a hurdler[']s position with one leg extended forward" and his left leg "bent awkwardly under him."  *Id.* ¶ 17.  He "gave out a cry of pain," *id.* ¶ 17, could not move his legs, *id.* ¶ 18, and "was not able to move or get up," *id.* ¶ 17.  Plaintiff and his friend both called for help, but none came.  *See id.* ¶ 18.  Plaintiff's friend also looked into the nearby station kiosk, in the hope of finding a WMATA employee who could help plaintiff, but did not see anybody in the kiosk.  *See id.* ¶ 19.

Approximately fifteen or twenty minutes after plaintiff's fall, a single WMATA employee arrived on the scene but, on seeing plaintiff, "backed away and said he could not help," *id.* ¶ 20, instead telling plaintiff and his friend that he would call a supervisor, *see id.* ¶ 21.  Shortly thereafter a WMATA supervisor arrived, looked at plaintiff, and went into a nearby office.  *See id.*  Plaintiff, still lying immobile on the ground in front of the turnstile, then saw the supervisor and the first WMATA employee come and go from the office, but neither advised him whether help was on the way.  *Id.* ¶ 22.  Eventually plaintiff's friend used her cell phone to call WMATA herself and request assistance.  *See id.*

An Emergency Medical Technician ("EMT"), ambulance, and Metropolitan Police Department officer then arrived on the scene. *See id.* ¶ 23. Plaintiff was lifted onto a stretcher, his leg was straightened, and he was taken to Howard University Hospital, *id.* ¶¶ 24–25, where doctors determined that plaintiff "had torn sections of his knee cap that keep the patella from moving involuntarily" and required immediate surgery, *id.* ¶ 28. After plaintiff was lifted off the ground and placed onto a stretcher, his friend "saw what appeared to be a foreign object/substance under [p]laintiff's left leg at or near the location where he had fallen." *Id.* ¶ 25. She "did not touch or remove the object" but "noticed that [it] was near the location where [p]laintiff had stepped before he lost his footing" and fell to the floor. *Id.* ¶ 26.

The following day, plaintiff underwent surgery on his left knee. *See id.* ¶ 29. He continues to receive medical treatment for the injury and is engaged in physical therapy to rehabilitate his leg. *See id.* ¶¶ 29, 33. As a result of the injury, he has lost time at work, *id.* ¶ 29, and also suffers "significant enduring emotional pain and suffering, anxiety, fear and shame," "severe insomnia, persistent recurring nightmares, and acute anxiety," for which plaintiff has sought medical treatment, *id.* ¶ 41.

### B. Procedural Background

Plaintiff filed the instant lawsuit on December 4, 2020, alleging two torts, under the common law of the District of Columbia, against WMATA. First, he alleges negligent infliction of emotion distress ("NIED") (Count One), arguing that "[t]he negligent acts and omissions of . . . WMATA caused serious emotional distress to [p]laintiff that a reasonable person in [d]efendant's position would have foreseen under the circumstances," *id.* ¶ 37, specifically citing the fact that the WMATA employee and supervisor "observed [p]laintiff laying [sic] on the . . . floor after his fall" but "did nothing to assist him," *id.* ¶ 38. Second, he alleges negligence (Count Two), claiming both that WMATA "had the duty to exercise ordinary care under the

circumstances to keep the Gallery Place station reasonably safe" but failed to comply with that duty, *id.* ¶ 43, and that WMATA was required "to take reasonable action to give its passengers . . . first aid, after it knows or has reason to know that they are injured," *id.* ¶ 47, which duty WMATA also failed to fulfill, *see id.* ¶ 48. Plaintiff seeks at least $500,000 in damages, in addition to costs, interest, and reasonable attorney's fees. *See id.* at 12.

WMATA filed the pending Partial Motion to Dismiss on January 5, 2021, moving for dismissal for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), of plaintiff's NIED claim and his negligence claim to the extent it is based on "negligent failure to render aid," Def.'s Mem. Supp. Partial Mot. Dismiss ("Def.'s Mem.") at 1, ECF No. 10.[1] That motion is fully briefed, *see* Def.'s Mem.; Pl.'s Opp'n Def.'s Partial Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 12; Def.'s Reply Supp. Partial Mot. Dismiss ("Def.'s Reply"), ECF No. 14, and is now ripe for resolution. For the reasons set out below, WMATA's motion is denied.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that also "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1]    WMATA does not seek dismissal of plaintiff's negligence claim to the extent it is founded on plaintiff's allegation, based on the "foreign object/substance" that plaintiff's friend saw "at or near the location where he had fallen," Compl. ¶ 25, that WMATA "knew or should have known that the . . . dangerous condition of water or other slippery substance existed and failed to clean or correct that condition," *id.* ¶ 27, and thereby breached its duty to keep the premises of the Gallery Place Metro station reasonably safe.

544, 557 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and construing all reasonable inferences in favor of the plaintiff, *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016); *see also Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016). Courts do not "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

## III. DISCUSSION

WMATA seeks dismissal of plaintiff's NIED claim, arguing that the claim impermissibly seeks duplicative damages and that plaintiff has not adequately pled each of its elements, as well as his negligence claim based on WMATA's alleged failure to help plaintiff, on the basis that WMATA did not breach any duty owed to plaintiff. These arguments are discussed in turn, and are rejected.

### A. Plaintiff's NIED Claim

WMATA argues that plaintiff's NIED claim should be dismissed for two reasons: first, the recovery for emotional injury sought in this claim is already compensable through plaintiff's negligence claim, and, second, plaintiff has failed adequately to plead that the emotional injury was sufficiently severe. *See* Def.'s Mem. at 2–4.

#### 1. *Possibility of Duplicative Damages*

WMATA first argues that plaintiff's "claim for Negligent Infliction of Emotional Distress is inapplicable because his claim involves a physical injury and damages for emotional distress are already available to [p]laintiff, if proven, vis-a-vis his standard negligence claim," *id.* at 2, and that, as such, plaintiff's NIED claim "is merely a request for ancillary or parasitic

damages for the mental distress experienced as a result of his physical injury," *id.* at 2–3.

According to WMATA, then, since any damages for plaintiff's emotional injury are recoverable

pursuant to his negligence claim, "[a]llowing him to also recover for emotional distress under a

separate count would invite the award of duplicative relief," and so the NIED claim should be

dismissed. *Id.* at 3.

Plaintiff's negligence claim and NIED claim are both based on WMATA's alleged failure

to call for aid. *See* Pl.'s Opp'n at 9 ("Here, the legally protected interest that [serves as the basis

for plaintiff's NIED claim] . . . is [d]efendant's failure to render aid."). As such, these claims are

best understood as alternative theories of liability, depending on whether, as a matter of fact, that

failure to render aid caused plaintiff physical damages in additional to emotional damages. That

is, if WMATA's failure to summon help for plaintiff were responsible for physical damage that

he suffered—if, for example, its failure to render aid worsened plaintiff's leg injury, *see* Compl.

¶ 49—then WMATA is correct that a jury could award plaintiff damages, pursuant to his

negligence claim, to compensate him for both his physical and emotional injury. *See, e.g.*,

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 809 (D.C. 2011) (noting that D.C. courts

"routinely allow recovery for pain and suffering as 'parasitic' damages when the plaintiff's

emotional distress is caused by the defendant's invasion of another legally-protected interest,

such as freedom from physical injury"). On the other hand, if WMATA's failure to render aid

did not cause plaintiff underlying physical harm, then any emotional damages attributable to that

failure would be recoverable only through an NIED claim, which permits recovery for emotional

damages without underlying physical injury. *See Williams v. Baker*, 572 A.2d 1062, 1073 (D.C.

1990) ("discard[ing] the requirement, that, to be compensable, mental or emotional harm must be

caused by physical injury to the direct victim of a defendant's negligence" and permitting

recovery under NIED for stand-alone emotional injury); *Hedgepeth*, 22 A.3d at 813 (noting that NIED permits recovery in "cases where the patient suffers only emotional distress").

Such alternative or inconsistent pleading is expressly countenanced by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *see also* D.C. SUPER. CT. CIV. R. 8(d)(2) (same); FED. R. CIV. P. 8(d)(3) ("A party may state as many claims or defenses as it has, regardless of consistency."); D.C. SUPER. CT. CIV. R. 8(d)(3) (same). Plaintiff's Complaint is therefore not defective solely for alleging two distinct, and inconsistent, theories under which WMATA would be liable for damages for emotional injuries plaintiff suffered.

To be sure, though, "courts can and should preclude double recovery," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002); *see also, e.g.*, *Kakeh v. United Planning Org., Inc.*, 655 F. Supp. 2d 107, 122 (D.D.C. 2009) (collecting cases), and thus "[d]amages for the same injury may be recovered only once even though they are recoverable under two or more legal theories for two or more wrongs," *Rice v. Dist. of Columbia*, 818 F. Supp. 2d 47, 57 (D.D.C. 2011) (citing *Franklin Inv. Co. v. Smith*, 383 A.2d 355, 358 (D.C. 1978)). The appropriate method to prevent such double recovery is not to dismiss a plaintiff's properly pled alternative theory of liability but rather to "reduce the judgment by the amount of the duplication" after a jury has actually awarded, or arguably awarded, duplicate damages. *Id.* at 58 (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997)); *see also Giordano v. Interdonato*, 586 A.2d 714, 717 (D.C. 1991) (holding trial court erred in requiring plaintiff to elect which of two alternative theories of liability she wished to pursue before sending case to jury in order to

preclude double recovery, rather than addressing any potential double recovery after jury had returned verdict). The future possibility that a jury could award plaintiff duplicative damages for his NIED claim and his negligence claim thus provides no basis for dismissing the former.

WMATA relies heavily on *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1 (D.D.C. 2019), in contending that the availability of emotional damages for plaintiff's negligence claim necessitates dismissal of his NIED claim. *See* Def.'s Mem. at 2–3. Such reliance is misplaced. In *Attias*, the court noted that NIED "claims are distinct from other negligence claims where plaintiff seeks to recover for pain and suffering as 'parasitic' damages as a result of or incident to the 'invasion of another legally protected interest.'" *Attias*, 365 F. Supp. 3d at 16 (quoting *Hedgepeth*, 22 A.3d at 809). This unobjectionable observation that NIED claims are "distinct from other negligence claims" in that they permit recovery for stand-alone emotional injury, *id.*, however, did not bear on the court's reasoning in dismissing the *Attias* plaintiffs' NIED claims. Rather, the court dismissed those claims because "[p]laintiffs' allegations regarding their pain and suffering [were] too conclusory," and they had "failed to plead 'serious and verifiable' emotional distress." *Id.* (quoting *Hawkins v. WMATA*, 311 F. Supp. 3d 94, 107–08 (D.D.C. 2018)). As explained further below, *see infra* Part III.A.2, plaintiff here, unlike the plaintiff in *Attias*, has adequately pled the elements of the NIED cause of action.

Accordingly, the overlap between and inconsistency in plaintiff's NIED and negligence claims, as well as the future possibility that a jury might award plaintiff duplicative damages for his emotional injury, does not require dismissal of plaintiff's NIED claim.

## 2. *Elements of an NIED Claim*

Next, WMATA separately contends that plaintiff has not adequately pled an NIED claim. Def.'s Mem. at 5. "To make out a claim for negligent infliction of emotional distress, a plaintiff

must show that '(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable.'" *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *Rice v. Dist. of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011)).[2] WMATA cursorily argues that "[p]laintiff has failed to allege any of the required elements," but focuses in particular on the fourth element, contending that plaintiff's alleged "severe insomnia, persistent recurring nightmares, and acute anxiety" Compl. ¶ 41, are "insufficient" to qualify as serious and verifiable emotional distress, Def.'s Mem. at 4.

This argument belies the severity of plaintiff's alleged emotional injuries. For an emotional injury to be "serious and verifiable," it must have "result[ed] in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Jones v. Howard Univ.*, 589 A.2d 419, 424 (D.C. 1991) (emphasis omitted) (quoting *Vance v. Vance*, 408 A.2d 728, 733 (Md. 1979)); *see also, e.g.*, *Rice v. Dist. of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011)

---

[2] This four-pronged test is not the exclusive means of making out an NIED claim, however. Under an alternative test, a plaintiff may recover for NIED if he "can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepeth*, 22 A.3d at 810–11. The paradigmatic case of NIED under this "special relationship" theory of the tort is that of a doctor who negligently and erroneously informs a patient that she has a serious disease. *See id.* at 813 (noting that "most cases claiming [this theory of] negligent infliction of emotional distress have arisen—and we think will continue to arise—in the context of doctor-patient relationships."). Plaintiff briefly, and unpersuasively, argues that he has adequately pled an NIED claim under this "special relationship" theory, contending that "[b]ecause . . . WMATA is a common carrier[,] a special relationship between Plaintiff and Defendant exists which requires a higher degree of care than ordinary care." Pl.'s Opp'n at 9–10. As WMATA rightly notes, this "is an inaccurate statement of the law," Def.'s Reply at 2, since "WMATA, like any common carrier, owes a duty [only] of *reasonable care* to its passengers," *WMATA v. Johnson*, 726 A.2d 172, 176 (D.C. 1999) (en banc) (emphasis added) (quoting *McKethean v. WMATA*, 588 A.2d 708, 712 (D.C. 1991)). WMATA thus did not have the a relationship with plaintiff that "necessarily implicat[e]d . . . [his] emotional well-being," nor is "there . . . an especially likely risk that [WMATA's] negligence would cause serious emotional distress to the plaintiff." *Hedgepeth*, 22 A.3d at 810–11. In any event, this is not fatal to plaintiff's NIED claim, as his complaint adequately makes out an NIED cause of action under the "zone of physical danger" test, as explained in the text.

("'Serious and verifiable' means that the distress must have manifested in an external condition or physical symptoms." (citing *Jones*, 589 A.2d at 424)). Plaintiff's alleged symptoms, including ongoing insomnia, nightmares, and acute anxiety, Compl. ¶ 41, are sufficiently "external condition[s]," *Jones*, 589 A.2d at 424, to meet this standard. *See, e.g.*, *Jones*, 589 A.2d at 421 (permitting plaintiff to proceed with NIED claim where alleged injury "included depression, anxiety, [and] sleep disturbance," among other psychological symptoms); *Cauman v. George Washington Univ.*, 630 A.2d 1104, 1106 n.6 (D.C. 1993) (assuming that plaintiffs' allegations that they suffered "'great pain of mind, anxiety, anguish, grief, and severe emotional distress' w[ere] sufficient to establish that their emotional injuries were serious and verifiable" (citing *Baker*, 572 A.2d at 1068)). Plaintiff's alleged insomnia, which requires ongoing medical treatment, Compl. ¶ 41; *see also* Pl.'s Opp'n at 10, in particular, is plainly a "physical symptom[]," *Rice*, 774 F. Supp. 2d at 33, and therefore qualifies as serious and verifiable emotional distress.

Plaintiff also satisfies the other elements of an NIED claim. After plaintiff's fall, as he lay on the floor "cry[ing] [in] pain," unable to move or lift his leg, and "scream[ing] for help," Compl. ¶¶ 17, 30, he reasonably would have feared that his ongoing failure to receive prompt medical attention, attributable to WMATA's alleged failure to summon help for him, was exacerbating the injury he suffered when he fell. That state of mind satisfies not only the requirement that he fear for his safety but also the requirement that he was in the zone of physical danger. *See, e.g.*, *Jones*, 589 A.2d at 423 (observing that zone of danger requirement is satisfied when defendant's "negligence results in a long continued peril, [as] the [emotional injury] may be caused by the cumulative effects of the anxiety and suspense caused by the [plaintiff's] constant subjection to it" (internal quotation mark omitted) (quoting RESTATEMENT

(SECOND) OF TORTS § 436 cmt. c (1965))); *Sowell v. Hyatt Corp.*, 623 A.2d 1221, 1225–26 (D.C.

1993) (finding that plaintiff was in zone of physical danger when she reasonably feared for her

future safety after consuming worm in food as consequence of defendant's negligence).

Plaintiff's Complaint does not invoke the phrases "zone of physical danger" or "feared for his

own safety." Yet a fair reading of the Complaint, and the drawing of reasonable inferences in

plaintiff's favor, *see Nurriddin*, 818 F.3d at 756, requires concluding that both elements are

satisfied here.[3] Finally, as explained in more detail below, *see infra* Part III.B, plaintiff has

adequately alleged that his presence in the zone of physical danger and fear for his own safety

were attributable to WMATA's negligence, namely its failure to render him aid after he fell.

In sum, then, when afforded the benefit of reasonable inferences in plaintiff's favor, the

Complaint adequately states a claim for NIED. WMATA's request that the claim be dismissed is

therefore denied.

**B.      Plaintiff's Negligence Claim Based on WMATA's Alleged Failure to Render Aid**

To state a claim for negligence under District of Columbia law, a plaintiff must allege

"(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the

defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty." *Powell v.

Dist. of Columbia*, 634 A.2d 403, 406 (D.C. 1993). WMATA urges that plaintiff's negligence

claim, based on his allegation that WMATA's employees failed to help him after he fell, must be

dismissed, since WMATA owed plaintiff only a limited duty to summon aid and, according to

the allegations of plaintiff's Complaint, that duty was not breached. *See* Def.'s Mem. at 4.

---

[3]      WMATA responds only that "[t]he 'zone of danger' concept is not applicable to this case as Plaintiff claims that he actually sustained injuries," the suggestion being that the zone of physical danger applies only to "near-miss experience[s]" rather than actual physical impacts. Def.'s Reply at 3. This objection disregards, however, that the zone of physical danger test applies "*regardless of whether plaintiff experienced a physical impact* as a direct result of defendant's negligence." *Baker*, 572 A.2d at 1067 (emphasis added).

Although WMATA correctly states the scope of its duty to aid plaintiff after he fell, the assertion that the Complaint fails to plead adequately failure to discharge that duty is rejected.

### 1. *Scope of WMATA's Duty to Plaintiff*

"[A] landowner owes a duty of reasonable care to all persons, including both invitees and licensees, who are lawfully on the landowner's premises." *Boyrie v. E & G Property Servs.*, 58 A.3d 475, 477 (D.C. 2013). Since it holds its land open to the public, WMATA owes a duty of reasonable care to its customers, which includes a duty to provide first aid or summon medical help for injured or ill persons. *See, e.g.*, *Harris v. WMATA*, 490 F. Supp. 3d 295, 316 (D.D.C. 2020) (citing *Boyrie*, 58 A.3d at 477–78) (noting that "land possessors who hold their property open to the public," including WMATA, "have a duty to provide first aid or summon medical help for injured and ill persons who entered the land in response to the invitation"); *Whiteru v. WMATA*, 258 F. Supp. 3d 175, 192 n.11 (D.D.C. 2017) (citing Restatement (Second) of Torts § 314(A)(1)(b) (noting, with respect to WMATA customer who had fallen down escalator, that "there is no dispute that, had [WMATA employee] performed a reasonable inspection . . . and discovered [plaintiff] in his incapacitated state, she would have had a duty to render some form of assistance"); Restatement (Second) of Torts § 314A(a)(1)(B) ("A common carrier is under a duty to its passengers to take reasonable action . . . to give them first aid after it knows or has reason to know that they are ill or injured . . . . ."); *see also WMATA v. O'Neill*, 633 A.2d 834, 840 (D.C. 1993) (relying on Restatement (Second) of Torts § 314A in identifying and defining duty owed by WMATA to passengers). WMATA therefore acknowledges, as it must, that it owed plaintiff a duty to call for help. *See* Def.'s Mem. at 4.

Although WMATA was obligated to summon help for plaintiff, its duty to him extended no further. In particular, WMATA was not required actually to provide plaintiff with first aid, as

opposed to summoning a third party capable of administering such aid. A common carrier with a duty to render aid is "not required to take any action beyond that which is reasonable under the circumstances," and "will seldom be required to do more than give such first aid as he reasonably can, and [then] take reasonable steps to turn the sick [person] over to a physician, or to those who will look after him and see that medical assistance is obtained." RESTATEMENT (SECOND) OF TORTS § 314A, cmt. f.[4] Under these circumstances, where plaintiff had clearly suffered a serious injury that WMATA's employees were not capable of treating, WMATA had no duty to attempt itself to provide medical assistance to plaintiff, and its duty to him would have been discharged by summoning emergency medical help.

### 2. *Whether WMATA Breached Its Duty to Plaintiff*

With the scope of WMATA's duty defined, WMATA contends that plaintiff has not alleged that that duty was breached and that, as such, plaintiff has failed to plead a negligence claim. *See* Def.'s Mem. at 4–5. Citing the Complaint and plaintiff's other submissions, WMATA claims that plaintiff acknowledges that "[t]he WMATA employees took the only action reasonable under the circumstances, which was to call for help." *Id.* at 4.

At this stage of the instant litigation, however, when all reasonable inferences must be drawn in plaintiff's favor, *see Nurriddin*, 818 F.3d at 756, WMATA's proposed telling of the

---

[4] The parties quibble over the applicability to the instant case of principles articulated in the Restatement (Second) of Torts. WMATA rightly cites § 314A of the Second Restatement for the proposition that it was not itself required to *provide* plaintiff with medical assistance. *See* Def.'s Mem. at 4–5. Plaintiff argues that the Restatement (Third) of Torts has "replaced" the Second Restatement and "abrogated it completely." Pl.'s Opp'n at 11. This argument fails to appreciate that the Restatements are statements of general legal principles, not binding law, and so an older Restatement is not "abrogated" by a newer version in the same way that a statute may be. Significantly, § 314A of the Second Restatement has actually been relied upon by the D.C. Court of Appeals in determining the scope of WMATA's duties to its passengers, *see O'Neill*, 633 A.2d at 840, indicating that the principles laid out in that section of the Second Restatement have been adopted by D.C. courts as the law of the jurisdiction. In contrast, plaintiff points to no case in which a D.C. court has relied on the Third Restatement for similar purposes. In any event, this dispute is ultimately illusory, as it is apparently based on plaintiff's mistaken impression that WMATA has argued that it was not required to summon aid for plaintiff because he was accompanied by a friend at the time of his injury. *See* Pl.'s Opp'n at 11. As noted, WMATA does not contest that it owed plaintiff a duty to call for help. *See* Def.'s Mem. at 4.

facts must be rejected. Specifically, plaintiff has not conceded that WMATA's employees called for help, and the reasonable implication of his pleading is that they did not. Plaintiff's specific allegations underlying his failure to render aid claim are that (1) the WMATA employee who first arrived on the scene "looked at plaintiff but backed away and said he could not help," Compl. ¶ 20; (2) the employee then "retreated" and said "that he would call a supervisor," *id.* ¶ 21; (3) a WMATA supervisor "arrived and looked at [p]laintiff," "moved away," and "went into an adjacent office near the turnstile," *id.*; (4) plaintiff's friend observed the WMATA employee and supervisor "come in and out of the office to look at plaintiff[,] but [they] did not approach him" or "advise if they had called for assistance," *id.* ¶ 22; and (5) plaintiff was "finally attended to by an [EMT]" that arrived only after plaintiff's friend "used her personal phone to call for help by calling WMATA," *id.* ¶ 22–23.

Nowhere does the Complaint state that WMATA actually summoned help for plaintiff. To the contrary, on these facts, whether the EMT arrived because WMATA's employees called for help or because plaintiff's friend called for help is indeterminate. Given that some period of time passed after WMATA's employees said they would call for help, during which period no help arrived, and that the EMT did not arrive until after plaintiff's friend called for help, the reasonable inference in plaintiff's favor is that WMATA's employees did not call for help and that the EMT arrived only because of plaintiff's friend's call. Accordingly, contrary to WMATA's contention, plaintiff's Complaint implies, even if it does not explicitly state, that WMATA did not call for help and thereby breached its duty to plaintiff to summon medical assistance for him after he fell. Plaintiff has thus adequately pled a claim for negligence, and WMATA's request that plaintiff's negligence claim based on failure to render aid be dismissed is therefore denied.

**IV. CONCLUSION**

For the foregoing reasons, WMATA's Partial Motion to Dismiss is denied. Plaintiff's claims for NIED and negligence, both based on WMATA's alleged failure to call for help, are adequately pled. Furthermore, the overlap between those two claims, and the future possibility that a jury could award duplicative damages, provide no basis for dismissing plaintiff's NIED claim.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: July 13, 2021

                                                _____
                                                BERYL A. HOWELL
                                                Chief Judge