UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES COBB,

              Plaintiff,

        v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

              Defendant.

Civil Action No. 20-3522 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Charles Cobb sued defendant Washington Metropolitan Area Transit Authority ("WMATA") after he slipped on an unidentified substance at one of its Metro stations and sustained serious injuries to his knee, bringing two claims for negligence and negligent infliction of emotional distress. *See* Pl.'s Compl. ("Compl."), ECF No. 1. Following discovery, defendant now moves for summary judgment, arguing that the record falls short of establishing required elements of both plaintiff's claims, precluding any reasonable jury from finding in plaintiff's favor. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 30. For the reasons explained below, defendant's motion is granted.

**I.    BACKGROUND**

Late in the evening of December 6, 2019, plaintiff left his office with a friend and entered defendant's Gallery Place metro rail station. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Ex. 1, Deposition of Charles Cobb ("Cobb Dep.") at 16:2, 19:1–7, 24:21-25:20, ECF No. 31-1; Def.'s Statement of Material Facts ("Def's SMF") ¶¶ 1, 2, ECF No. 30-2; Pl.'s Resp. Def.'s Statement of Material Facts ("Pl.'s Resp. SMF") ¶¶ 1, 2, ECF No. 31.

1

At approximately 10:54 p.m., as he walked towards the turnstiles leading to the train platforms, plaintiff slipped and fell on an unknown object or substance, which plaintiff's friend would later describe as "look[ing] like a wet leaf." Def.'s Mot., Ex. 2, Metropolitan Police Dep't Public Incident Report ("MPD Report"), ECF No. 30-4; Def.'s SMF ¶ 1; Pl.'s Resp. SMF ¶ 1; Pl.'s Opp'n, Ex. 2, Deposition of Kathleen Brandon ("Brandon Dep.") at 35:13–37:2, ECF No. 31-2. Plaintiff's leg was severely twisted in the fall and he was unable to get back up. Cobb Dep. 38:11–16, 47:22–48:9, 126:16–17; Brandon Dep. at 49:8–22, 56:8–11. As plaintiff lay on the ground crying out in pain, his friend asked for help from two WMATA employees who were standing nearby. *Id.* at 10:13–12:11, 32:1–6, 38:4–5, 39:13–42:11, 49:2–4. Neither employee attempted to approach plaintiff; one told plaintiff's friend he would need to speak to a supervisor, while the other went into an office within the station. Cobb Dep. at 126:18–127:3; Brandon Dep. 39:13–42:11. Whether either employee summoned help thereafter is unclear from the record. *See* Cobb Dep. at 127:4–15. Plaintiff's friend continued to call for help, as did several other passers-by, and one or more of them called 911. Brandon Dep. at 38:4–39:12.

Emergency Medical Technicians were dispatched at 10:56 p.m. and reached plaintiff ten minutes later. Def.'s Mot., Ex. 3, Dist. of Columbia Fire and EMS Report ("EMS Report") at 2, ECF No. 30-5; Def.'s SMF ¶ 5; Pl.'s Resp. SMF ¶ 5. Plaintiff was transported to the hospital by ambulance, where he underwent knee surgery the following morning. Def.'s SMF ¶ 6; Pl.'s Resp. SMF ¶ 6; Cobb Dep. 50:16–51:6, 115:10–120:4. With the help of several months of physical therapy, plaintiff is once again able to walk, but still suffers from some residual tightness and occasional pain, and his performance in some physical activities remains impaired. *Id.* at 74:1–75:12, 87:13–88:22, 101:1–18.

On December 4, 2020, plaintiff sued WMATA, alleging that defendant's employees negligently inflicted emotional distress upon plaintiff by doing nothing to assist him when he fell and negligently caused his injuries by failing both to keep the station free of hazards and to respond after he fell.  *See* Compl. ¶¶ 37–41; 43–49.[1]  He seeks up to $500,000 in compensatory damages for the injuries he sustained as a result of his fall.  *Id.* at 12.  Subsequently, WMATA's partial motion to dismiss plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), to the extent those claims were based on negligent failure to render aid, was denied.  *See Cobb v. Washington Metro. Area Transit Auth.*, No. 20-cv-3522 (BAH), 2021 WL 2935891 (D.D.C. July 13, 2021); Order Denying Motion to Dismiss, ECF No. 15.

On September 30, 2022, following approximately seven months of discovery, defendant moved for summary judgment, arguing that plaintiff failed to turn up sufficient evidence through discovery to support required elements of both his claims, Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 30-1, at 3–14, which motion is now ripe for resolution, *see* Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), ECF No. 33.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law."  *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see also* Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v.*

---

[1]     The Court has jurisdiction over this matter pursuant to the WMATA Compact, D.C. Code § 9–1107.01, which states that "[t]he United States District Courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]."  D.C. Code § 9–1107.01(81); *see also Barksdale v. Washington Metro. Area Transit Auth.*, 512 F.3d 712, 714 (D.C. Cir. 2008).

*Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)).

"Evaluating whether evidence offered at summary judgment is sufficient to send a case to the jury is as much art as science." *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011). This evaluation is guided by the related principles that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 651 (quoting *Liberty Lobby*, 477 U.S. at 255 (alteration in original)). Courts must avoid making "credibility determinations or weigh[ing] the evidence," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (internal quotation omitted); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295–96 (D.C. Cir. 2015). In addition, for a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011); *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50

4

(citations omitted).  Moreover, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In that situation, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (internal quotation omitted).  While the materials explicitly cited by the parties "need" to be considered, "other materials in the record" may also be reviewed at the court's discretion.  *See* Fed. R. Civ. P. 56(c)(3).

### III.   DISCUSSION

Defendant contends that summary judgment should be granted in its favor because plaintiff fails to present evidence as to required elements for both claims.  *See* Def.'s Mot. at 1.  The sufficiency of plaintiff's showing as to each of his claims is assessed in turn.

#### A.   Count I: Negligent Infliction of Emotional Distress

To succeed on his claim for negligent infliction of emotional distress, plaintiff would have to establish that "(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C. Cir. 2015) (internal quotation omitted).[2]

Here, plaintiff's showing falters on the final requirement.  Not all emotional distress gives rise to a claim for negligent infliction of emotional distress; rather, it "must be acute, enduring or life-altering." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 817 (D.C. 2011).

---

[2] Alternatively, a plaintiff who is not in the zone of danger may nonetheless succeed on a negligent infliction of emotional distress claim by establishing that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810 (D.C. 2011).  As previously clarified at the motion to dismiss stage, WMATA does not have the requisite "special relationship" with its passengers, so plaintiff's claim proceeded only under the "zone of physical danger" test. *Cobb*, 2021 WL 2935891, at *5 n.2.

"Emotional distress that is considered 'serious and verifiable' includes 'long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration.'" *Siegel v. Ridgewells, Inc.*, 511 F. Supp. 2d 188, 193 (D.D.C. 2007) (quoting *Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990). *See also Rice v. Dist. of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) ("'Serious and verifiable' means that the distress must have manifested in an external condition or physical symptoms." (citing *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991))); *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 107–08 (D.D.C. 2018) (explaining same).

While plaintiff undoubtedly suffered some fear and distress upon falling in the Metro station and as he waited for help and then to recover from his injuries, the record does not indicate that this distress rose to the level of "acute, enduring or life-altering." *Hedgepeth*, 22 A.3d at 817. In fact, plaintiff explained in his deposition that he is "fine . . . you know, even from this [incident]," elaborating that while "[he] feel[s] bad that it happened," because "[he] was in pain and all that, but you know what, [he] got up so it's not the number one thing in [his] life." Def.'s Mot., Ex. 1, Dep. Of Charles Cobb ("Cobb Dep.") at 65:4–9. When asked specifically about any lingering effects of the incident, he did not identify any long-lasting emotional damage:

> Well, like I say, I haven't played golf, and in terms of residual problems one of the things—I mean, I just try to be more careful about everything but that's about it, and I'm just blessed that I got up.

*Id.* at 92:2–8. To the extent plaintiff suffered emotional distress as a result of his fall, then, the record makes clear that plaintiff recovered from such distress in due course and that this distress was not unusually severe, as would be required to support his negligent infliction of emotional distress claim. Indeed, in his opposing brief, plaintiff does not even attempt to rebut defendant's

6

argument that the evidence of serious and verifiable emotional distress was lacking. *See* Pl.'s Opp'n at 35–37 (discussing only the first three elements of the claim).

In the absence of any showing whatsoever as to this key element of plaintiff's negligent infliction of emotional distress claim, no reasonable jury would be able to find in plaintiff's favor, and defendant's motion for summary judgment must be granted to defendant as to Count I.

### B. Count II: Negligence

"Under District of Columbia common law, a plaintiff alleging negligence must establish three elements: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm." *Whiteru v. Washington Metro. Area Transit Auth.*, 25 F.4th 1053, 1057 (D.C. Cir. 2022) (citing *Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)). Plaintiff's negligence claim is based on two distinct theories of liability: first, that defendant negligently failed to remedy the dangerous condition on the station floor that caused plaintiff's fall, and second, that defendant negligently failed to render aid to plaintiff after he fell, worsening his injuries. *See* Compl. ¶¶ 43, 46.

In order to "create a jury question" as to defendant's negligence as to the first theory of liability—defendant's purported creation or maintenance of a dangerous condition—"the plaintiff must produce evidence from which a reasonable juror may conclude . . . that the defendant had actual or constructive notice" of the hazard that cause plaintiff's injury. *See Marinopoliski v. Irish*, 445 A.2d 339, 340 (D.C. 1982). Here, such evidence is lacking. While something on the station floor indisputably caused plaintiff to slip and fall, plaintiff does not offer any evidence that WMATA employees had either actual or constructive notice of the item. "As a general rule, issues of constructive notice are 'peculiarly within the province of juries,'"

7

because a "variety of factors" can create a genuine issue of material fact as to whether a defendant should have been aware of a given hazard. *Kindig v. Whole Foods Market Grp., Inc.*, 930 F. Supp. 2d 48, 51 (D.D.C. 2013) (quoting *Hines v. Safeway Stores, Inc.*, 379 A.2d 1174, 1175 (D.C. 1978)). For example, plaintiffs have created genuine issues as to constructive notice by showing that "the hazard existed for an ongoing amount of time prior to the injury," that "the defendant had received previous complaints and had knowledge that prior accidents occurred at the location," that "the defendant performed previous remedial measures to correct similar nearby hazards," and that "[i]nclement weather" like "rain, snow, or other precipitation was substantial in volume or duration" so as to create a danger of a slippery floor. *Id.* at 51–52 (citing *Lynn v. Dist. of Columbia*, 734 A.2d 168, 171 (D.C. 1999); *Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 175 (D.C. 1992); *Whitehouse v. Safeway Stores, Inc.*, 385 A.2d 755, 756 (D.C. 1978); *Doctors Hospital v. Badgley*, 156 F.2d 569, 570 (D.C. 1946)).

Despite this panoply of options, plaintiff makes no argument whatsoever in his brief regarding defendant's contention that constructive notice was lacking. *See generally* Pl.'s Opp'n. Careful scrutiny of the proffered deposition testimony and record evidence likewise fails to raise any fact that might give rise to a finding of constructive notice, such as how long the slippery item was on the floor before plaintiff's fall, any knowledge defendant might have had of previous accidents at that location, any practices defendant might have followed regularly to clean items off the station floor, or the weather on the night of the incident. Without such evidence, plaintiff's negligence claim cannot proceed to a jury on the theory of defendant's creation or maintenance of a dangerous condition. *See, e.g.*, *Wilson v. Washington Metro. Area Transit Auth.*, 912 A.2d 1186, 1190–91 (D.C. 2006) (affirming judgment as a matter of law in

8

favor of defendant where no evidence was offered to show the bus driver's actual or constructive knowledge of the spilled substance that caused passenger's fall).

As to the second theory of liability—defendant's failure to render aid to plaintiff after his fall—defendant argues, first, that it did not breach any applicable duty because "Plaintiff's testimony proves that WMATA was unaware of his need for assistance until after a Metropolitan Police officer, [plaintiff's] companion, and others came to his aid and called for emergency medical assistance." Def.'s Mem. at 8. As defendant correctly asserts, its duty "[u]nder these circumstances, where plaintiff had clearly suffered a serious injury that WMATA's employees were not capable of treating," was a limited one, encompassing only the obligation to summon help and to care for plaintiff until he could be cared for by others. See *Cobb*, 2021 WL 2935891, at *6–7; *Whiteru*, 25 F.4th at 1058; Def.'s Mem. at 6–7.

Defendant goes too far, however, in insisting that the evidence in this case "proves" that this duty was not breached because plaintiff was already receiving help before WMATA was aware of the problem. *Id.* at 8. Viewed in the light most favorable to plaintiff, plaintiff has presented evidence, through plaintiff's friend, that two WMATA employees were the first people from whom she sought help. See Brandon Dep. at 39:13–42:11. Although this helpful testimony to plaintiff is actually undercut by plaintiff's own testimony that police officers and other passers-by were on the scene prior to any WMATA employee, *see* Cobb Dep. at 43:1–44:17, a jury could reasonably credit the testimony of plaintiff's friend on this issue over that of plaintiff—who was on the ground and in pain at the time—and thus find that the two WMATA employees had the first opportunity to summon help, which they did not do. Defendant is therefore not entitled to summary judgment on the ground that no reasonable jury could find that it breached its applicable duty of care. See *Whiteru*, 25 F.4th at 1059 (concluding that

9

"WMATA could be liable for failing to aid [plaintiff] because it knew or had reason to know that he was injured," yet did nothing summon help or otherwise attempt to aid the incapacitated plaintiff).

That is not the end of the matter, however. Defendant's final argument as to plaintiff's negligence claim is that, even if a duty of care to plaintiff were breached by defendant's employees failing to call for or render aid to plaintiff once he had fallen, that breach would not have proximately caused his injuries, for plaintiff received medical care in a timely fashion regardless. *See* Def.'s Mem. at 8. At first blush, this is a long-shot argument, for generally, the existence of proximate cause is "a factual issue for the jury," and only in "exceptional cases" will the question of proximate cause be decided on a summary judgment motion. *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 275 (D.D.C. 2020) (internal quotation omitted); *see also Beach TV Properties, Inc. v. Solomon*, 306 F. Supp. 3d 70, 96 (D.D.C. 2018). The question only morphs into one of law "when the evidence . . . will not support a rational finding of proximate cause" by any reasonable jury. *Dist. of Columbia v. Freeman*, 477 A.2d 713, 716 (D.C. 1984); *see also Claytor v. Owens-Corning Fiberglas Corp.*, 662 A.2d 1374, 1382 (D.C. 1995) (explaining same).

The record here demonstrates such an exceptional case. The undisputed facts here establish that plaintiff fell at 10:54 p.m. and that emergency medical technicians were dispatched at 10:56 p.m. *See* MPD Report; EMS Report at 2; Pl.'s Resp. SMF ¶¶ 1, 5. Thus, someone— even if not WMATA employees—called for help almost immediately after plaintiff fell. Even if defendant breached its duty "to summon help for plaintiff," *see Cobb*, 2021 WL 2935891, at *7, by failing to call emergency medical services after it had reason to know plaintiff was injured, a reasonable jury could not conclude that this failure proximately caused or worsened plaintiff's

10

injuries.  Someone else promptly stepped in to make that call in a timely fashion; if defendant had also done so, plaintiff would not have received help any sooner.  *See, e.g.*, *Robinson v. Washington Metro. Area Transit Auth.*, 676 A.2d 471, 475–76 (D.C. 1996) (concluding that no rational jury could find proximate cause given "no evidence" that "a timely call" to the police would have prevented plaintiff's injury, where plaintiff's assault lasted two minutes and the police would have taken five to ten minutes to arrive).[3]

With critical elements lacking in both theories of liability to support plaintiff's negligence claim, summary judgment must accordingly be granted to defendant as to Count II.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff has not produced sufficient evidence to create a genuine issue of material fact as to required elements of his two claims.  The record, viewed in the light most favorable to the non-moving party, would not allow any reasonable jury to find that plaintiff suffered severe emotional distress, as required for his negligent infliction of emotional distress claim, that defendant had actual or constructive notice of the hazard that caused plaintiff's fall, as required for his negligence claim on a maintenance of a dangerous condition theory, or that defendant's failure to call for aid could have proximately caused

---

[3]  *Harris v. Washington Metro. Area Transit Auth.*, 490 F. Supp. 3d 295 (D.D.C. 2020), a case neither cited nor relied upon by either party, is not to the contrary.  There, at the motion to dismiss stage, allegations that a WMATA employee's failure to call to police after the victim was "obviously hurt" at 11:41 p.m. proximately caused plaintiff's death, despite the police being called by a third-party at 11:42 p.m., were deemed sufficient to survive the motion to dismiss, because "[t]he evidence at trial might (or might not) show that if the station agent had made a separate call for emergency help, the dispatcher would have sent a medical response team that arrived sooner than the [police], was better equipped to help [the victim], or both."  *Id* at 317.  Here, by contrast, even following discovery, no evidence has been uncovered or presented in the record that plaintiff possibly could have received swifter or more effective care had the WMATA employees made a separate call to the EMTs, who reached plaintiff ten minutes after dispatch and were fully prepared to render the appropriate aid.  The issue was not revisited in *Harris* at the summary judgment stage, as it turned out the WMATA employee had in fact called the police, making further comparison inapt.  *Harris v. Washington Metro. Area Transit Auth.*, 544 F. Supp. 3d 53, 61 (D.D.C. 2021).

plaintiff's injuries, as required for his negligence claim on a failure to render aid theory.

Summary judgment is therefore GRANTED to defendant on both of plaintiff's claims.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: May 3, 2023

_____
BERYL A. HOWELL
U.S. District Court Judge